**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHEEKS OF NORTH AMERICA, INC.,

    Plaintiff,

    v.

FORT MYER CONSTRUCTION
CORPORATION, *et al.*,

    Defendants.

Civil Action No. 10-1746 (CKK)

**MEMORANDUM OPINION**
(August 16, 2011)

This action was filed on October 15, 2010 by Plaintiff Cheeks of North America, Inc.

("CNA") seeking relief for injuries allegedly suffered when CNA lost a series of competitive bids

for construction contracts that were awarded by the D.C. Department of Transportation

("DDOT"), the D.C. Department of Public Works ("DPW"), and the D.C. Water and Sewer

Authority ("WASA"). Among the claims asserted in its thirteen-count First Amended

Complaint, CNA alleges that it is the victim of a bid-rigging conspiracy by five of its main

competitors and their surety and that contracting officials at DDOT and WASA were negligent

for failing to stop the alleged conspiracy. CNA also asserts a variety of claims alleging antitrust

violations, fraud, and breach of procurement regulations. Presently pending before the Court are

motions to dismiss filed by nearly all of the defendants in this action, a motion for sanctions, and

a motion for discovery filed by CNA. These motions have been fully briefed by the parties and

are therefore ripe for resolution by this Court.

Based on a thorough review of the pleadings, the parties' briefs, the applicable

authorities, and the record as a whole, the Court finds that CNA lacks standing to assert most of

the claims asserted in the First Amended Complaint and that where CNA does have standing, CNA has failed to state a claim upon which relief can be granted. The Court also finds that sanctions are not warranted against CNA's counsel. Therefore, for the reasons explained below, the Court shall grant the pending motions to dismiss, deny the motion for sanctions, and deny CNA's pending motion for discovery as moot.

## I. BACKGROUND

The facts set forth in this section are derived from the First Amended Complaint, which the Court must accept as true for purposes of evaluating a motion to dismiss.

### A. *The Parties*

#### 1. <u>CNA</u>

Plaintiff Cheeks of North America, Inc. ("CNA") is a District of Columbia corporation with its principal office at Suite 350, 1425 K Street, NW, Washington, DC 20005. First Am. Compl. ("FAC") ¶ 80. CNA is engaged primarily in specialized purchasing, contracting, infrastructure, and strategic business planning and development. *Id.* John C. Cheeks ("Cheeks") is the founder and President of CNA. *Id.*

#### 2. <u>The Construction Company Defendants</u>

Defendant Fort Myer Construction Corporation ("Fort Myer") is a Virginia corporation registered to conduct business in the District of Columbia. FAC ¶ 81. During the relevant time period (August 20, 2008 to September 25, 2009), Fort Myer was engaged in infrastructure construction. *Id.* ¶ 83. Defendant Jose Rodriguez ("Rodriguez")[1] serves as President of Fort

---

[1] In the First Amended Complaint, CNA sometimes spells Rodriguez's name as "Rodrigues." The Court adopts the spelling used by Rodriguez in the papers he has filed with the Court.

Myer; Defendant Francisco R. Neto ("Neto") serves as Vice President; and Defendant Lewis Shrensky ("Shrensky") serves as Treasurer and Secretary. *Id.* ¶ 81. Defendant George Batista ("G. Batista")[2] is an employee of Fort Myer who is involved in pricing contracts for infrastructure services. *Id.* ¶ 82.

Defendant Anchor Construction Corporation ("Anchor") is a District of Columbia corporation involved in general construction and contracting. FAC ¶ 85. Defendants Neto and Rodriguez serve on the Board of Directors of Anchor. *Id.* ¶ 84. Defendants Cristina R. Gregorio ("C. Gregorio") and Florentino Gregorio ("F. Gregorio") also served on the Board of Directors of Anchor during the relevant time period. *Id.*

Defendant Civil Construction, LLC ("Civil") is a Maryland corporation licensed to conduct business in the District of Columbia that engages in construction work. FAC ¶ 87. Defendants Shrensky and Rodriguez serve on the Board of Directors of Civil. *Id.* ¶ 86.

Defendant Capitol Paving of D.C., Inc. ("Capitol Paving") is a District of Columbia corporation engaged in general and specialty construction. FAC ¶ 88. Defendant Neto is the President and Treasurer of Capitol Paving. *Id.*

Defendant A&M Concrete Corp. ("A&M") is a Virginia corporation engaged in construction business. FAC ¶ 89. Defendant Joe Alves ("Alves") is the Executive Vice President of A&M. *Id.* ¶ 90. Defendant Alexandra Batista ("A. Batista") is the Administrative Assistant for A&M. *Id.* ¶ 91. A. Batista is alleged to be related to G. Batista, who is also alleged to work for A&M as a manager. *See id.* ¶¶ 7, 213.

---

[2] This defendant has entered an appearance in this action as "Paulo J. Baptista."

### 3. Western Surety

Defendant Western Surety Company ("Western Surety") is a commercial fidelity surety bond company. FAC ¶ 92. It is a subsidiary of CNA Surety. *Id.* ¶ 13. Defendant Paul T. Bruflat ("Bruflat") is a Senior Vice President of Western Surety. Western Surety is alleged to have provided bid bonds for Fort Myer, Anchor, Civil, and Capitol Paving in connection with bids they submitted to WASA and DDOT.

### 4. Contracting Agency Defendants

Defendant D.C. Water and Sewer Authority ("WASA") is an independent authority of the District of Columbia that provides water service to the District of Columbia. FAC ¶ 94. Also named as defendants are the WASA Procurement Department, the WASA Board of Directors, and the WASA Retail Services Committee. *Id.* ¶¶ 95, 98, 99. During the relevant time period, the WASA Procurement Department was engaged in managing water and sewage projects for residential, commercial, governmental, and institutional use in the District of Columbia. *Id.* ¶ 96. The WASA Board of Directors was engaged in voting on such water and sewage projects. *Id.* ¶ 98. The WASA Retail Services Committee was responsible for the final voting on contracts for these water and sewage projects. *Id.* ¶ 100. Defendant Joseph Cotruvo ("Cotruvo") was a member of the WASA Retail Services Committee. *Id.* Former WASA General Manager Jerry Johnson and Contract Administrator Carlo Enciso are also named as defendants in this action, as are former or present WASA Board of Directors members William M. Walker ("Walker") and Neil Albert ("Albert"). *Id.* ¶¶ 96-97. CNA also references an individual named Avis Russell ("Russell") in connection with WASA. *See* FAC at *v*.

The District of Columbia Department of Public Works ("DPW") is an agency of the

District of Columbia government. The DPW Office of Contracting and Procurement is named as a defendant in this action, as is James Roberts, who served as a contracting officer for DPW. FAC ¶ 102.

Defendant D.C. Department of Transportation ("DDOT") is also an agency of the D.C. government. FAC ¶ 103. Defendant Jerry M. Carter ("Carter") served as a Contracting Officer for DDOT during the relevant time period; Defendant Gabe Klein ("Klein") served as the Director of DDOT during the relevant time period; and Defendant David P. Gragan ("Gragan") served as the Chief Procurement Officer during the relevant time period. *Id.*

### 5. District of Columbia Government Defendants

In addition to the contracting agency defendants listed above, CNA has named a number of D.C. government officials as defendants in this action. These defendants include the Committee on Public Works and Transportation of the Council of the District of Columbia ("Public Works Committee"); its former chairperson, Councilmember Jim Graham ("Councilmember Graham"); his former Chief of Staff, Ted G. Loza ("Loza"); and the committee's former legislative and budget director, Steven Hernandez ("Hernandez"). *See* FAC ¶¶ 104-07. CNA has also named former D.C. Mayor Adrian Fenty ("Fenty") and the Executive Office of the Mayor as defendants, as well as former D.C. Attorney General Peter Nickles ("Nickles") and the Office of the Attorney General. *Id.* ¶¶ 108-11.

CNA has also named the D.C. Department of Small and Local Business Development ("DSLBD") as a defendant. CNA contends that DSLBD officials endorsed Fort Myer, Anchor, Civil, and Capitol Paving with affirmative action points in connection with bids they submitted for contracts. *See* FAC ¶ 123. CNA also identifies an individual named Lee Smith ("Smith") in

connection with DSLBD as a defendant in the First Amended Complaint.  *See* FAC at *v*.

B.  *CNA Fails to Win Contracts Through Competitive Bidding Processes*

The allegations in the First Amended Complaint revolve around six solicitations for bids on construction contracts to be awarded by WASA, DDOT, and DPW.[3]  CNA submitted a bid for each contract, but its bid was rejected in each case.  CNA broadly alleges that the five construction company defendants (Fort Myer, Anchor, Civil, Capitol Paving, and A&M) acted in concert during the bidding process to fix their bids and allocate the contracts among themselves.  *See* FAC ¶¶ 4, 8, 15.[4]  According to CNA, these companies maintained interlocking directorates and conspired to submit sham bids and submit false affidavits of noncollusion during the bidding process.  *Id.* ¶ 9.  CNA further alleges that Western Surety aided and abetted the conspiracy by issuing bid bonds to these five companies with knowledge of their interlocking directorates.  *Id.* ¶ 10.  CNA claims that the individual officers and employees of these companies who are named as defendants are liable because they aided and abetted the conspiracy and committed fraud.  *See id.* ¶ 18.  CNA also claims that WASA and the District of Columbia government and their officials were negligent or grossly negligent in failing to stop the alleged conspiracy and failing to conduct proper oversight.  *Id.* ¶¶ 19-21.

1.  WASA Contract No. 080020

On August 20, 2008, CNA submitted a bid for the total sum of $11,154,500 in response

---

[3] CNA states in the First Amended Complaint that there are five contracts alleged to be unlawful.  *See* FAC ¶ 30.  However, the facts alleged by CNA involve six contracts.  Because CNA's allegations are inconsistent regarding the number of contracts at issue in this case, the Court shall discuss all six contracts.

[4] Although CNA alleges that all five of these companies were part of the alleged conspiracy, *see, e.g.*, FAC ¶¶ 4, 8, 15, the First Amended Complaint often refers to only four companies as defendants, omitting A&M.  *See, e.g., id.* ¶¶ 70, 135.

to WASA's Invitation for Bid ("IFB") No. 080020 ("Replacement of Small Diameter Priority Water Mains for 2008 Construction"). *See* FAC ¶ 136 & Ex. D.9.1. CNA submitted a bid bond representing 5% of the bid ($557,725) in the form of a company check. *Id.* ¶ 137 & Exs. D.7.1 & D.7.5.[5] Anchor, Civil, Fort Myer, and Capitol Paving also submitted bids; CNA alleges that Western Surety issued guaranteed bid bonds on their behalf. *Id.* ¶¶ 138, 140. WASA procurement officer Carlo Enciso opened the bids on August 20, 2008. *Id.* ¶ 139. CNA was announced as the lowest bidder; Anchor submitted the next lowest bid. *Id.* ¶ 141.

On September 9, 2008, Cheeks received a letter from WASA informing him that CNA's bid had been declared non-responsive and therefore not eligible for award. *Id.* ¶ 141 & Ex. H.1.1. The letter stated that "[e]lements considered in this decision were that your bid did not include a completed Bid Bond with sureties or certified check(s) for five percent (5%) of the bid amount." *Id.*, Ex. H.1.1. The record shows that on the Bid Form submitted with CNA's bid, Cheeks checked a box indicating that the bid guaranty would be submitted in the form of a certified check. *See id.*, Ex. D.7.1. The checks that Cheeks submitted for CNA were not certified. *See id.*, D.7.5. Cheeks also filled out a "Bid Bond" form that identified CNA as the principal but did not identify a surety. *Id.*, Ex. D.7.2. CNA filed a bid protest on September 30, 2008[6] alleging bid rigging, discrimination, and failure to give adequate notice and time to cure. *See id.*, Ex. K.1.1-2. On October 23, 2008, WASA Director of Procurement John P. Christodoulakis sent Cheeks a letter informing him that CNA's bid protest had been denied

---

[5] The record shows that CNA submitted two checks in equal amounts signed by Cheeks to cover this amount. *See* FAC Ex. D.7.5.

[6] CNA misidentifies the date of this protest as September 28, 2009 in the First Amended Complaint. *See* FAC ¶ 142.

because it was not filed within five days as required by WASA procurement regulations. *See id.*, Ex. K.1.4-5. The letter also reiterated that procurement regulations require that bids be guaranteed and that uncertified checks will not be accepted. *Id.* CNA was not provided an opportunity to resubmit its bid with a proper guaranty. *Id.* ¶¶ 143, 169.

On November 6, 2008, the WASA Board of Directors resolved that the contract be awarded to Anchor, the next-lowest bidder. *Id.* ¶ 143 & Ex. G.1.11.

### 2. WASA Contract No. 090080

On March 25, 2009, CNA submitted a bid in response to WASA's IFB No. 090080 ("Sanitary Sewer Lateral Replacements"). *See* FAC ¶ 144 & Exs. D.1.10 & D.9.2. According to the bid tabulation sheet, CNA's bid was the highest out of seven bidders, including Fort Myer, Civil, Anchor, and Capitol Paving. *Id.*, Ex. D.9.2. The lowest bid was submitted by Corinthian Contractors in the amount of $6,424,140. *Id.* CNA's bid amount was $11,298,320; the other bids submitted were all less than $8 million. *Id.*

On March 29, 2009, CNA filed a bid protest with WASA indicating that it had made a calculation error in its initial bid and that its actual bid should have been $5,040,000, which would make CNA the lowest bidder. *See id.*, Ex. K.2.1-2. CNA contends that WASA never responded to CNA's bid protest and awarded the contract to Corinthian Contractors. *Id.* ¶ 145.

### 3. WASA Contract No. 090020

On April 1, 2009, CNA submitted a bid in response to WASA's IFB No. 090020 ("Fire Hydrant Replacement Contract 4"). *See* FAC, Exs. D.7.3-4 & D.9.3. According to the bid tabulation sheet, CNA's bid of $2,817,600 was the second lowest received. *Id.*, Ex. D.9.3. The lowest bid was submitted by Nastos Construction, Inc. in the amount of $2,703,160. *Id.* Fort

Myer, Civil, Anchor, and Capitol Paving also submitted bids. *Id.* WASA ultimately awarded the contract to Nastos Construction, Inc. *Id.*, Ex. D.1.10. CNA's bid form indicates that neither a bid bond nor a certified check was provided as a bid guaranty; the "Bid Bond" form submitted by CNA was signed by Cheeks alone and lacked a surety. *See id.*, Ex. D.7.3-4.

    4. DDOT Contract No. DCKA-2009-B-0025

  On March 18, 2009, CNA submitted a bid in response to DDOT's IFB No. DCKA-2009-B-0025 ("Pavement Restoration City-Wide"). *See* FAC, Exs. D.8.1 & D.10.3. Two days prior to the opening of the sealed bids, on March 16, 2009, Cheeks received an email with information regarding an amendment of the solicitation ("Amendment 6"). *Id.* ¶ 290. The amendment addressed two issues, one involving insurance requirements and one involving subcontracting requirements from the Office of Local, Small and Disadvantaged Business Enterprise. *See id.*, Ex. D.14.1. CNA alleges that Amendment 6 was engineered by DDOT so as to favor Fort Myer and Capitol Paving in the bidding. *Id.* ¶¶ 289, 291. CNA had to readjust its bid so as to strategically compete for the contract award. *Id.* ¶ 292. CNA ultimately submitted a bid in the amount of $54,252,805. *Id.*, Ex. D.10.3. CNA was determined to be the lowest bidder, beating five other bidders including Fort Myer and Capitol Paving. *Id.*

  On May 27, 2009, DDOT Contracting Officer Jerry M. Carter sent CNA a letter indicating that its bid was non-responsive and ineligible for award because CNA had incorrectly submitted five separate, uncertified checks for the bid security. *See id.* ¶ 299 & Ex. H.4.1. The record confirms that CNA submitted five separate uncertified checks. *See id.*, Ex. D.8.1-3. Carter did not allow CNA time to cure this defect. *Id.* ¶ 296. CNA filed a bid protest with the D.C. Contract Appeals Board on June 17, 2009 alleging a bid-rigging conspiracy and contract

steering by DDOT. *See id.*, Exs. K.4.2-5. CNA's protest did not raise the bid security issue. *See id.*[7] The contract was ultimately awarded to Fort Myer. *See id.*, Ex. L.1.3 & Att. 1.

5.    DDOT Contract No. DCKA-2009-B-0193

CNA submitted a bid in response to DDOT's IFP No. DCKA-2009-B-0193 ("Safe Routes to School"). *See* FAC ¶¶ 130, 149 & Ex. D.11.3. CNA's corrected bid was $2,376,095.90. *Id.*, Ex. D.11.3. Fort Myer, Capitol Paving, Civil, Anchor, and A&M also submitted bids. *Id.* CNA's corrected bid was the fourth lowest after those submitted by Anchor, Capitol Paving, and Fort Myer. *See id.* ¶ 130(v)[8] & Ex. D.11.3.[9] The contract was awarded to Anchor.

CNA filed a bid protest with the D.C. Contract Appeals Board challenging the award to Anchor. *See* D.C. Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J., Ex. 1 (Protest of CNA Corp. Solicitation No. DCKA-2009-B-0193, CAB No. P-0826). The District of Columbia moved to dismiss the bid protest on the grounds that, *inter alia*, CNA's bid was non-responsive because it failed to include proper bid security. *See id.* at 1. The Contract Appeals Board found that CNA had submitted a "bid bond" in the form of an unsigned letter from a company

_____

[7] It is unclear from the record how CNA's bid protest was resolved, although CNA does not allege that its bid protest was successful. CNA does allege that Adrian Fenty ignored a stop work order issued by the judge presiding over the bid protest. *See* FAC ¶ 301. However, it is unclear how this allegation relates to CNA's claims.

[8] Paragraph 130(v) references Ex. D.11.1 in support of this claim, but that exhibit is the bid tabulation sheet for a different contract.

[9] Paragraph 149 of the First Amended Complaint describes each of the bids submitted and lists CNA as the sixth lowest bidder, with lower bids also submitted by Omni Excavators and Potomac Construction Co. *See id.* ¶ 149. However, this information is clearly contradicted by other evidence in the record showing that CNA was the fourth lowest bidder. Ultimately, this factual dispute is immaterial to the Court's ruling with respect to this contract solicitation.

promising to purchase invoices from CNA upon the completion of performance, and only if the procurement officer verifies that the work has been performed. *See id.* at 4. The Contract Appeals Board determined that this was not adequate bid security under the procurement regulations and therefore CNA's bid was non-responsive. *Id.* Because CNA was not in line for the award, the Board ruled that CNA lacked standing to raise other challenges to the award. *Id.*

      6.    DPW Contract No. DCKT-2009-B-0003

CNA submitted a bid in response to DPW's IFB No. DCKT-2009-B-0003 ("On-Site Preventive Maintenance Services"). *See* FAC ¶ 130 & Ex. D.11.1. CNA was the lowest of three bidders; the other bidders were Fleet Pro and Twilbar & Arnold, Inc. *Id.*, Ex. D.11.1. On December 30, 2008, DPW Contracting Officer James Roberts sent Cheeks a letter asking for more information about CNA's bid. *See id.*, Ex. D.19.2-4. The letter explained that DPW was not required to award the contract to the lowest bidder if that bidder is not responsible, and the contracting officer may determine that the bidder is not responsible if there are doubts regarding the productive capacity or financial strength of the bidder. *Id.* Roberts asked CNA to provide, *inter alia*, a cash flow statement, a list of any back taxes owed to the D.C. or federal governments, a list of current and expired contracts relative to the services to be provided, a list of employees, proof of insurance, and a statement describing how the services would be provided. *See id.* The allegations in the First Amended Complaint do not describe what response CNA provided to DPW, but apparently DPW was not satisfied with CNA's response.

    *C.    The Claims Asserted in the First Amended Complaint*

The Court begins by noting that the claims and allegations in this action are substantially the same as those raised by Cheeks in a prior action filed *pro se* in this Court. *See Cheeks v. Fort*

*Myer Constr. Corp.*, 722 F. Supp. 2d 93 (D.D.C. 2010). The Court dismissed Cheeks's prior lawsuit, holding that Cheeks lacked standing to assert claims that were based on competitive injuries to CNA. *See id.* CNA has now filed this action seeking recovery for many of the same alleged injuries. Although CNA is represented by counsel (as it must, being a corporate entity), the wording of many of the claims and allegations is largely unchanged from the *pro se* complaint filed by Cheeks. The First Amended Complaint is a sprawling, prolix document that contains nearly two hundred pages of allegations in 754 separately numbered paragraphs, incorporating by reference over five hundred pages of exhibits that were attached to the initial complaint. Ultimately, CNA's claims are outlined in thirteen counts, which the Court shall describe below.

1. <u>Counts One Through Four: Violations of § 1 of the Sherman Act</u>

In Counts One, Two, Three, and Four of the First Amended Complaint, CNA asserts claims under § 1 of the Sherman Act, which provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.

In Count One, CNA alleges that Fort Myer, Anchor, Civil, and Capitol Paving were engaged in a bid-rigging conspiracy in violation of the Sherman Act.[10] CNA contends that these four defendants collusively submitted bids for contracts so as to make the winning bid appear competitive and reasonable. *See* FAC ¶ 159. "[C]onspiracies to submit collusive, noncompetitive, rigged bids . . . are *per se* violations of the Sherman Act." *United States v. Rose*,

_____

[10] CNA specifically identifies the defendants named with respect to each count under the heading of each count in the First Amended Complaint. The Court accepts this as CNA's official statement of which claims are asserted against which defendants, notwithstanding the fact that CNA references other parties within the description of each count.

449 F.3d 627, 630 (5th Cir. 2006) (internal citations omitted). CNA does not allege any specific facts that indicate an agreement among these defendants. Rather, CNA alleges that these companies shared directors and managers and therefore had common and overlapping interests. *See* FAC ¶¶ 5-7, 9, 30-31, 43, 67, 162-67, 171. CNA contends that these defendants' collusive bidding prevented CNA from winning the contracts described above.[11] CNA seeks damages from Fort Myer, Anchor, Civil and Capitol Paving in the amount of $582,175,180,80. *Id.* ¶ 177.

Count Two asserts a claim against Western Surety. CNA alleges that Western Surety issued bid bonds to Fort Myer, Anchor, Civil, and Capitol Paving in connection with the contract solicitations and that therefore Western Surety should have known that these companies were colluding and had interlocking directorates. *Id.* ¶¶ 184-85. CNA alleges that "but for the intentional failure of [Western Surety] to recognize violations of federal law, none of the surety bonds would have issued, and consequently, none of the contracts would have been awarded to the conspiring and affiliated contractors." *Id.* ¶ 188. CNA prays for damages from Western Surety in the amount of $91,900,488.70. *Id.* ¶ 197.

Count Three asserts a claim against Fort Myer, Anchor, Civil, Capitol Paving, A&M, WASA (and its Board of Directors and Retail Services Committee), the District of Columbia (including DDOT and its Office of Contracting and Procurement), the Public Works Committee, and Alves and A. Batista in their personal capacities. *See* FAC at 50. With respect to the Fort Myer, Anchor, Civil, and Capitol Paving, the claims in Count Three appear to be identical to those raised in Count One. Count Three alleges that A&M was also a part of the alleged bid-

_____

[11] CNA focuses almost entirely on the five contracts solicited by WASA and DDOT throughout the First Amended Complaint. However, because CNA also makes references to the DPW contract solicitation at various places, *see* FAC ¶¶ 128, 130, 373, 529, the Court shall assume that CNA intends to assert claims based on all six contract solicitations described above.

rigging conspiracy and seeks damages in the amount of $500,000 from A&M and $100,000 from G. Batista (who is not explicitly named as a defendant for Count Three). *Id.* ¶ 213. CNA alleges that WASA and the District of Columbia became a part of the alleged conspiracy by "violat[ing] a myriad of duties to control the actions of [their] own agents, officials, and boards." *Id.* ¶¶ 203-04. CNA claims that WASA and DDOT accepted bids from the defendant construction companies when it had knowledge that they shared common ownership. *Id.* ¶¶ 208-09. CNA contends that employees of WASA and DDOT should have known that the entire bidding process would be voided by the alleged conspiracy. *Id.* ¶ 209. Although they are named as defendants for Count Three, there are no specific allegations pertaining to Defendants Alves and A. Batista. CNA concedes in its opposition brief that it has failed to allege any facts pertaining to Alves and agrees that Alves may be dismissed as a defendant. *See* Pl.'s Opp'n to Defs. A&M, Alves & A. Batista's Mot. to Dismiss at 1.

Count Four asserts a claim for "price fixing" against Fort Myer, Anchor, Civil, and Capitol Paving in violation of § 1 of the Sherman Act.[12] CNA alleges that these companies determined in advance what prices to use in the bids that were submitted to WASA and DDOT. *See* FAC ¶ 220. CNA further alleges that the companies arranged their bids so as to completely cover the range of bidding with the apparent intent to exclude competition. *Id.* ¶ 226. The Court understands this claim to be essentially duplicative of the claim in Count One.

The Court notes that in paragraph 30 of the First Amended Complaint, CNA makes reference to § 8 of the Clayton Act, 15 U.S.C. § 19, which prohibits interlocking directorates among competing corporations whose capital, surplus, and undivided profits exceed a threshold

---

[12] CNA also purports to name A&M as a defendant in this count. *See* FAC ¶ 228.

jurisdictional amount in excess of $10 million, subject to certain exceptions.[13]  *See* FAC ¶ 30

("The presentation of the affiliation and interlocking nature of these four principal bidders and

their saffiliates establishes patent violations of 15 U.S.C. § 19 (prohibition against interlocking

directorates).").  Although CNA makes general references to the Clayton Act several times in the

First Amended Complaint, *see* FAC ¶¶ 3, 42, 233, 265, 317, 604, 750, the Court does not

understand CNA to be asserting a claim based on any alleged violation of § 8.  CNA does not

identify § 8 of the Clayton Act as one of the thirteen counts it is asserting against the defendants

in this action, nor does it raise this claim in any of its briefs in opposition to defendants' motions

to dismiss.  CNA also does not specifically request relief in the form of an injunction against the

alleged interlocking directorates, which is the presumptive form of relief for a § 8 violation.

Furthermore, CNA does not plead facts that establish that the defendant construction companies

alleged to have interlocking directorates exceed the jurisdictional thresholds of § 8.  *See Reading*

*Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 326 n.16 (S.D.N.Y. 2003) ("In

order to state a claim under section 8, a plaintiff must also demonstrate that the corporations in

question are actual 'competitors' within the meaning of the antitrust laws, and that each

corporation meets a certain threshold for competitive sales, capital, surplus, and undivided

profits.").  Accordingly, the Court concludes that the First Amended Complaint does not state a

claim for violation of § 8 of the Clayton Act, and the Court shall not consider this to be a part of

CNA's claims in this action.

---

[13] Currently, competitor corporations are covered by Section 8 if each one has capital, surplus, and undivided profits aggregating no more than $26,867,000, except that no corporation is covered if the competitive sales of either corporation are less than $2,686,700.  *See* Revised Jurisdictional Thresholds for Section 8 of the Clayton Act, 76 Fed. Reg. 4349 (Jan. 25, 2011).

In Counts Five and Six of the First Amended Complaint, CNA purports to assert claims for unlawful monopolization under § 2 of the Sherman Act, 15 U.S.C. § 2.

In Count Five, CNA generally reasserts its claims regarding the bid-rigging conspiracy and alleges that Fort Myer, Anchor, Civil, and Capitol Paving "have achieved a near total monopoly of infrastructure contracts in the District of Columbia."  FAC ¶ 239.  CNA contends that these companies achieved this monopoly power through their bid-rigging conspiracy.  *Id.* ¶ 240.  In Count Six, CNA asserts claims against the four construction companies along with Defendants Neto, Rodriguez, Shrensky, F. Gregorio, C. Gregorio, and the District of Columbia government.  *See id.* at 67.  CNA alleges that the individual defendants named actively participated in the unlawful monopolization.  *Id.* ¶ 263.  CNA further alleges that District of Columbia government employees gave preferential treatment to the defendant contracting companies in connection with the contract solicitations.  *Id.* ¶ 264.  CNA contends that it is entitled to damages in Counts Five and Six relating to its loss of the contracts during the bid solicitations at issue.  *See id.* ¶¶ 267-71.

### 3.      Count Seven: Contract Steering

In Count Seven, which is captioned "Contract Steering," CNA names as defendants the District of Columbia, Fenty, Gragan, Carter, Klein, WASA, Carlo Enciso, and Jerry Johnson. *See* FAC at 77.  CNA alleges that these individuals were involved in contract steering and that they steered contracts to Fort Myer, Anchor, Civil, and Capitol Paving.  *Id.* ¶¶ 286-87.  CNA alleges that Carter planned Amendment 6 to IFB No. DCKA-B-2009-0025 to favor Fort Myer and Capitol Paving.  *Id.* ¶¶ 289-91.  CNA further alleges that DDOT, along with the Executive

Office of the Mayor and former Mayor Fenty, steered several "unsolicited" contracts in July and August 2009. *See id.* ¶ 302 & Exs. L.1.3-4. CNA alleges that WASA and Defendants Johnson and Enciso steered contracts to Anchor between August 19, 2008 and May 15, 2009. *Id.* ¶ 303. CNA contends that Johnson and Enciso should have known that Anchor was affiliated with Fort Myer, Civil, and Capitol Paving. *Id.* ¶ 304. CNA also alleges that Defendants Johnson and Enciso jointly steered WASA Contract Nos. 080020 and 090020 by removing CNA's bid package from the procurement department, failing to respond to his bid protest, failing to document fraud, and failing to acknowledge the common ownership of the defendant construction companies. *Id.* ¶ 305. CNA fails to cite any legal authority in Count Seven, so the legal basis for CNA's "contract steering" claim is unclear.

4.      Count Eight: Violation of Non-Collusion Affidavit

In Count Eight, CNA appears to claim that various defendants violated solicitation rules by falsely signing non-collusion affidavits in connection with their bids for contracts. *See* FAC ¶¶ 314, 316. The named defendants in this count are Fort Myer, Anchor, Civil, Capitol Paving, Neto, Rodriguez, Shrensky, F. Gregorio, C. Gregorio, Western Surety, Bruflat, WASA, Johnson, A&M, Alves, and A. Batista. *See* FAC at 84-85.

5.      Count Nine: Violation of D.C. Code § 28-4502

In Count Nine, CNA asserts a claim under D.C. Code § 28-4502, which provides that "[e]very contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce all or any part of which is within the District of Columbia is declared to be illegal." The named defendants in this court are Fort Myer, Anchor, Civil, Capitol Paving, Neto, Rodriguez, Shrensky, F. Gregorio, and C. Gregorio. *See* FAC at 90. CNA's allegations for

Count Nine generally mirror his allegations with respect to Count One for a bid-rigging conspiracy in violation of § 1 of the Sherman Act, and CNA makes clear that Count Nine is based on the same conduct alleged to violate the Sherman Act. *See id.* ¶ 329.

### 6. Count Ten: Violations of Procurement Regulations

In Count Ten, CNA alleges that WASA and its defendant officials Johnson and Enciso violated WASA procurement regulations by failing to notify CNA of mistakes in its bids and allowing CNA time to cure them. *See* FAC ¶¶ 346-47. CNA contends that the procurement regulations required the contracting officer to allow CNA to correct mistakes in its bids after they were submitted. *Id.* ¶¶ 349-54.

### 7. Counts Eleven and Twelve: Common Law Fraud & Oversight Failure

Count Eleven of the First Amended Complaint purports to assert a claim for fraud against Fort Myer, Anchor, Civil, Capitol Paving, Western Surety, Neto, Rodriguez, Shrensky, F. Gregorio, C. Gregorio, Bruflat, the District of Columbia, Nickles, Gragan, Carter, WASA (and its Board of Directors and Retail Services Committee), Johnson, Councilmember Graham, Loza, Hernandez, and the DSLBD.[14] *See* FAC at 100-01. CNA generally alleges that these defendants committed fraud by participating in the bid-rigging conspiracy, submitting false non-collusion affidavits, and failing to follow applicable laws and regulations. *See id.* ¶¶ 371-89. CNA also alleges that DDOT unilaterally awarded a contract to Fort Myer without bidding, *see id.* ¶ 390, but the record clearly shows that Fort Myer received the contract after CNA's bid was deemed non-responsive at the bid price that Fort Myer had previously submitted, *see id.*, Exs. D.10.3 & Att. 1.

---

[14] CNA also lists as defendants "[a]bout 25 unknown Conspirators with unknown addresses." FAC at 101.

Count Twelve asserts a claim against Fort Myer, Anchor, Civil, Capitol Paving, Neto, Rodriguez, Shrensky, F. Gregorio, C. Gregorio, the District of Columbia, Nickles, WASA, the members of the Public Works Committee, Councilmember Graham, Hernandez, and Fenty. *Id.* ¶¶ 537-557. Count Twelve is captioned, "Oversight Failure, Gross Negligence and Fraud of Governance Boards, Corporate Boards and the District of Columbia Government." CNA generally alleges that D.C. government and WASA officials enabled the bid-rigging conspiracy by failing to engage in effective oversight and through gross negligence. *Id.* ¶¶ 566-67.

8. <u>Count Thirteen: Tortious Interference with Business Relationships</u>

In Count Thirteen, CNA asserts a claim against Fort Myer, Anchor, Rodriguez, WASA, DDOT, Western Surety, and Bruflat for tortious interference with business relationships and with contracts. FAC at 162. CNA alleges that the actions of the defendant construction companies blocked CNA's entry into the market for infrastructure contracts, causing CNA to be unable to pay its debtors. *Id.* ¶ 605. CNA further alleges that these companies spread false information that CNA owed a debt to Fort Myer (although CNA concedes it owed $56.00 to Fort Myer) in order to ruin CNA's reputation. *Id.* ¶ 606-07.

D. *Procedural Background*

CNA filed this action on October 15, 2010. CNA filed its First Amended Complaint on November 9, 2010. On November 19, 2010, Defendants A&M, Alves, and A. Batista filed a [28] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). On November 24, 2010, Defendants Western Surety and Bruflat filed a [29] Rule 12(b)(6) Motion to Dismiss the First Amended Complaint. On January 10, 2011, Defendant Anchor filed a [46] Motion to Dismiss and Defendants Capitol Paving and Neto filed a [47] Motion to Dismiss the First Amended

Complaint. That same date, Defendants Shrensky, Rodriguez, and G. Batista filed a [49] Motion to Quash Service of Process. Also on that date, Defendant Fort Myer filed a [50] Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6); Defendant Civil filed a [51] Motion to Dismiss Amended Complaint; Defendants WASA, Albert, Cotruvo, Enciso, Johnson, Russell, and Walker filed a [52] Motion to Dismiss the Amended Complaint; Defendants District of Columbia, Fenty, Executive Office of the Mayor, Nickles, Gragan, DDOT Office of Contracting and Procurement, Carter, Klein, DPW Office of Contracting and Procurement, Roberts, Smith, and DSLBD filed a [56] Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment; and Defendants Councilmember Graham, Hernandez, and Loza filed a [57] Motion to Dismiss. CNA filed oppositions to all of these motions (several of which were consolidated into a single brief), and the defendants filed replies. On May 20, 2011, Fort Myer filed a [88] supplemental brief in support of its motion to dismiss; CNA filed an opposition brief in response and a [92] cross-motion to strike and for sanctions.[15] Fort Myer then filed an opposition to CNA's cross-motion; CNA filed a reply; and Fort Myer filed a surreply.

On January 24, 2011, Defendants A&M, Alves, and A. Batista filed a [63] Motion for Sanctions Against Plaintiff and Its Counsel pursuant to Federal Rule of Civil Procedure 11. These defendants contend that the claims asserted against them by CNA are frivolous and without factual basis. CNA has filed an opposition to the motion for sanctions, and these defendants have filed a reply.

On March 1, 2011, Defendant F. Gregorio filed a [72] Second Motion to Quash Service

---

[15] Although CNA is correct that Fort Myer did not seek leave to file a supplemental brief in support of its motion to dismiss, the Court shall deny CNA's cross-motion to strike and for sanctions. The Court shall consider Fort Myer's supplemental brief to the extent it is helpful to the Court's resolution of the disputed issues.

claiming that he had not been validly served with process pursuant to Rule 4. CNA filed an opposition to this motion, and F. Gregorio filed a reply.

On March 17, 2011, CNA filed a [85] Motion for Voluntary Dismissal of Claims Against Two Individual Defendants Without Prejudice with respect to Defendants Roberts and C. Gregorio. Defendant Roberts filed an opposition to CNA's motion, arguing that the Court should proceed to rule on his pending motion to dismiss. The Court agrees that it is appropriate to rule on the pending motions to dismiss rather than allow CNA to voluntarily dismiss these defendants without prejudice. Accordingly, the Court shall deny CNA's motion without prejudice.

On May 30, 2011, CNA filed a [89] Motion for Leave to Take One Deposition to Preserve Evidence. The motion seeks permission to take the deposition of Defendant Loza prior to the Rule 26(f) conference. Defendant Loza and the District of Columbia defendants filed an opposition and [96] cross-motion for protective order to preclude the deposition. Defendants argue that Loza enjoys legislative immunity and cannot be compelled to testify; furthermore, they argue that his testimony is unnecessary because the First Amended Complaint fails to state a claim upon which relief can be granted. These motions have been fully briefed and are ripe for resolution.

## II. LEGAL STANDARD

The defendants move to dismiss the First Amended Complaint in part for lack of subject matter jurisdiction based on a lack of standing and in part for failure to state claim upon which relief can be granted.

### A. *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)*

A court must dismiss a case pursuant to Rule 12(b)(1) when it lacks subject matter

jurisdiction. In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

B.     *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)*

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. (8)(a), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355

22

U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient factual allegations that if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. 1949 (citing *Twombly*, 550 U.S. at 556).

When considering a motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged") (internal quotation omitted). However, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1950. When a complaint's well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.*

# III. DISCUSSION

The defendants in this action have moved to dismiss the First Amended Complaint on a variety of grounds. Many of the defendants contend that CNA has failed to allege sufficient facts regarding their involvement in the alleged bid-rigging conspiracy to state a claim against them. The construction company defendants (Fort Myer, Civil, Anchor, Capitol Paving) contend that CNA lacks standing to assert its antitrust claims because the record clearly shows that its injuries were not caused by any alleged antitrust violation. Other defendants argue that the allegations in the First Amended Complaint are legally insufficient to state a claim upon which relief can be granted. The Court shall analyze defendants' arguments to the extent they are necessary to resolve each claim asserted by CNA. Because standing is essential to the Court's subject matter jurisdiction, the Court shall determine whether CNA has standing before turning to the merits of the claims asserted in the First Amended Complaint. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98 (1998).

## A. *CNA Lacks Standing to Assert Most of Its Claims*

To establish the "irreducible constitutional minimum of standing," a plaintiff must show: (1) that he or she suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal relationship between the injury and the challenged conduct; and (3) that the injury will likely be remedied by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In this case, it is the second prong of the standing inquiry—causation—that poses a problem for CNA. Nearly all of the claims asserted in the First Amended Complaint seek redress for CNA's failure to obtain a final contract through the six challenged solicitations. However, the facts as pled in the First Amended Complaint and

supporting exhibits reveal that CNA lost the contracts because of its own mistakes in the bidding process or because it was outbid by companies that are not alleged to be a part of the bid-rigging conspiracy. The Court shall review the facts relating to each contract solicitation to explain why CNA lacks standing to assert claims based on these injuries.

1.     Contracts for Which CNA's Bid Was Deemed Non-responsive

With respect to both WASA Contract No. 080020 and DDOT Contract No. DCKA-2009-B-0025, CNA was initially deemed the winning bidder but its bid was rejected as non-responsive because it failed to include the required bid security. With respect to DPW Contract No. DCKT-2009-B-0003, the record shows that DPW declined to award CNA the contract despite being the lowest bidder because CNA did not establish that it was a responsible bidder in response to DPW's request for documentation. Therefore, with respect to these contract awards, CNA's injury was not caused by any alleged anticompetitive conduct among CNA's competitors, but rather by CNA's own failure to comply with the bidding requirements.[16] Consequently, CNA has no standing to assert claims that his competitors were engaged in a bid-rigging conspiracy with respect to these contracts.

CNA does have standing to challenge the actions of the contracting officers and agencies in deeming its bids non-responsive, as it does in Count Ten alleging violations of procurement regulations. However, the Court does not understand CNA to be claiming that the contracting officers and agencies were an active part of the alleged bid-rigging conspiracy. Alternatively, to the extent that CNA is alleging that the procurement agencies and officials were a part of the bid-

---

[16] In addition, CNA does not allege that the other two bidders for DPW Contract No. DCKT-2009-B-0003 (neither of which are defendants in this action) were engaged in the bid-rigging conspiracy. Therefore, CNA has clearly failed to state any antitrust claim based on that contract solicitation.

rigging conspiracy, the Court finds that CNA has failed to state a claim upon which relief can be granted. Nowhere in the First Amended Complaint does CNA allege facts that plausibly suggest there was an actual agreement between any of the contracting officials and the alleged conspiring contracting companies to disadvantage CNA by disqualifying its bids.[17] Rather, CNA contends that the contracting officials and agencies aided and abetted the bid-rigging conspiracy by accepting the collusive bids and that they were negligent in failing to stop the contracting companies from colluding through the use of interlocking directorates. However, because the contracting officers' decisions to reject CNA's bids are not causally connected to the alleged conspiracy, CNA lacks standing to challenge that alleged conspiracy with respect to these contract awards.

2.     Contract Lost Due to CNA's Own Bidding Error

With respect to WASA Contract No. 090080, CNA admits that it lost the bid because it was the highest bidder due to CNA's own error in submitting its bid. Therefore, CNA's failure to win the contract was not the result of any alleged bid-rigging conspiracy, and CNA lacks standing to assert any such claim based on this contract solicitation. CNA does contend that it filed a bid protest seeking to correct its error and that WASA failed to respond to it. CNA does have standing to challenge WASA's failure to respond, but this is a separate claim from CNA's antitrust claims.

---

[17] The closest CNA comes to such an allegation is its claim that DDOT engineered Amendment 6 to IFB No. DCKA-2009-B-0025 so as to favor Fort Myer. However, CNA was the lowest bidder for that contract and its bid was disqualified for failure to submit proper bid security; therefore, CNA cannot rely on this allegation to establish a connection between DDOT's rejection of its bid and the alleged bid-rigging conspiracy.

3. <u>Contracts Where CNA Was Not the Lowest Bidder</u>

a. WASA Contract No. 090020

With respect to WASA Contract No. 090020, CNA alleges that the contract was awarded to Nastos Construction, Inc. ("Nastos"), the lowest bidder. CNA makes only three references to Nastos throughout its entire First Amended Complaint. *See* FAC ¶¶ 146, 243, 585. These references indicate only that Nastos submitted the lowest bid and that it was awarded the contract. In one paragraph, CNA writes in parentheses that Nastos is "(Other [company] in question), *see id.* ¶ 243; and in another paragraph, CNA marks Nastos with a double asterisk and a note stating "Others affiliated with Defendants," *id.* ¶ 146. To the extent that these minor notations are intended to imply that Nastos was conspiring with the other alleged conspirators, they are wholly inadequate. Alleging that Nastos was "in question" or "affiliated" with the defendant companies is not the same as alleging that Nastos was involved in the conspiracy. Without a competent allegation that Nastos was somehow involved in the conspiracy, however, CNA cannot establish that it lost WASA Contract No. 090020 as a result of any anticompetitive conduct. Accordingly, CNA lacks standing to assert any of its claims based on the loss of WASA Contract No. 090020 to Nastos.

b. DDOT Contract No. DCKA-2009-B-0193

The record shows that CNA was the fourth lowest bidder for DDOT Contract No. DCKA-2009-B-0193 behind Fort Myer, Anchor, and Civil. *See* FAC ¶ 130(v) & Ex. D.11.3. Because these three companies are alleged to have participated in the bid-rigging conspiracy, CNA may have standing to sue as a disappointed bidder if it can establish that it may have been awarded the contract in the absence of the bid-rigging conspiracy. *Cf. Free Air Corp. v. FCC,*

130 F.3d 447, 450 (D.C. Cir. 1997) ("[S]ufficiently viable runners-up in a procurement process have standing to allege that an illegality in the process caused the contract to go to someone else and not to them."); *Nat'l Maritime Union of Am. v. Commander, Military Sealift Command*, 824 F.2d 1228, 1237-38 (D.C. Cir. 1987) ("[I]njury to a bidder's right to a fair procurement is obviously an injury both traceable to the alleged illegality in a procurement and redressable by any remedy that eliminates the alleged illegality."). Assuming *arguendo* that the bids submitted by Fort Myer, Anchor, and Civil would have been higher than CNA's bid absent any collusion, CNA could ordinarily establish standing by being the next lowest bidder. However, the Contract Appeals Board ruled that CNA's bid was non-responsive because it failed to include the required bid security. Therefore, CNA could not have been awarded the contract even if it had been the lowest bidder. Accordingly, CNA lacks standing to assert claims based on its failure to win this contract.

4. Conclusion

Because the record clearly demonstrates that CNA's failure to win the six contracts described in the First Amended Complaint was not caused by any alleged bid-rigging conspiracy, CNA lacks standing to assert any claims that are premised on the alleged conspiracy. These claims include: Counts One, Two, Three, and Four, which charge that the various named defendants violated § 1 of the Sherman Act by engaging in the alleged bid-rigging conspiracy; Counts Five and Six, which charge that the bid-rigging conspiracy enabled defendants to monopolize the market for infrastructure contracts in violation of § 2 of the Sherman Act; and Count Nine, which charges that the bid-rigging conspiracy violates D.C.'s antitrust statute. Each of these counts seeks to hold defendants directly liable for engaging in anticompetitive conduct,

but because CNA cannot demonstrate that it was actually harmed by any such conduct, it lacks standing to assert these claims. Therefore, the Court shall dismiss these claims for lack of subject matter jurisdiction.

Several other claims asserted in the First Amended Complaint also fail for lack of standing. In Count Eight, CNA charges that the defendants violated solicitation rules by falsely submitting affidavits of non-collusion. Even assuming that there is a private right of action for such a claim, CNA lacks standing to assert it because it cannot demonstrate that its injury—its failure to win the contract awards—is traceable to the allegedly false affidavits. In Count Twelve, CNA charges that various procurement officials were negligent in failing to stop the alleged bid-rigging conspiracy. However, CNA cannot demonstrate that such alleged negligence played any causal role in its failure to win a contract. Therefore, these claims must also be dismissed for lack of standing.

Count Eleven purports to assert a claim for common law fraud against a series of defendants. However, it is clear from CNA's allegations that its fraud claim is based on the defendants' alleged participation in the bid-rigging conspiracy in some way or another. *See* FAC ¶¶ 371-89. Therefore, the Court finds that CNA lacks standing to assert its claim for fraud as alleged in the First Amended Complaint. To the extent that CNA purports to state a claim for fraud based on other allegations, it is clear to the Court that CNA's conclusory and generalized allegations do not satisfy the particularized pleading requirements of Federal Rule of Civil Procedure 9(b). Accordingly, the Court shall dismiss Count Eleven.

It appears to the Court that Counts Seven, Ten, and Thirteen rely at least in part on factual allegations that are distinct from the allegations of a bid-rigging conspiracy. Therefore, the Court

shall proceed to analyze the merits of those claims. Because the Court shall dismiss the other counts for lack of standing, the Court declines to reach the alternative arguments in favor of dismissal raised by the various defendants.

   B.  *CNA Has Failed to State a Claim for Contract Steering*

   In Count Seven, CNA purports to assert a claim against District of Columbia and WASA officials for "contract steering." The basis for CNA's claim is not entirely clear. In its opposition brief, CNA states that its contract steering claim is based on "systemic corruption amongst the individuals, agencies, and corporations that control the IFB Solicitations market." *See* CNA's [70] Opp'n to D.C. Defs.' Mot. to Dismiss or, Alternatively, for Summ. J. at 14. To the extent that CNA is alleging that these officials steered contracts to the defendant contract companies through actions such as the allegedly preferential Amendment 6, *see* FAC ¶¶ 289-95, CNA lacks standing to assert these claims because it cannot demonstrate that its injuries were caused by the alleged contract steering rather than by its own actions or inactions. To the extent that CNA is claiming that these defendants violated procurement regulations, *see id.* ¶ 296, its claim is duplicative of Count Ten, which the Court shall address below.

   CNA also appears to claim in Count Seven that the defendant officials violated D.C. Code § 1-204.51, a statutory provision which, *inter alia*, requires that the Council of the District of Columbia ("D.C. Council") approve certain multi-year contracts awarded by the District of Columbia. CNA alleges that defendants violated this provision with respect to three contracts that were awarded in July and August 2009. *See* FAC ¶ 302. The D.C. Defendants contend that this claim must be dismissed because there is no private right of action for violations of § 1-204.51. The D.C. Court of Appeals has explained that in determining whether a statute creates

an implied right of action, courts must look to three factors: (1) whether the plaintiff is "one of the class for whose *especial* benefit the statute was enacted"; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; and (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff. *In re D.G.*, 583 A.2d 160, 166 (D.C. 1990) (quoting *Cort v. Ash*, 422 U.S. 66 (1975)). The ultimate issue is whether the legislature intended to create a particular cause of action, and the burden is on the plaintiff to demonstrate that the D.C. Council intended to imply a right of action. *Coates v. Elzie*, 768 A.2d 997, 1001 (D.C. 2001) (quotation marks and citations omitted). CNA fails to respond to defendants' argument, and therefore the Court finds that CNA has conceded that there is no private right of action to enforce § 1-204.51. Accordingly, the Court shall dismiss Count Seven insofar as it purports to assert a claim based on a violation of this provision.

C.    *CNA's Claims Based on Violations of Procurement Regulations*

As the Court noted above, CNA does have standing to challenge violations of procurement regulations by contracting officials to the extent that those violations can be shown to have a causal connection to CNA's failure to win the contract. In this case, CNA contends that the WASA contracting officials violated procurement regulations by failing to notify CNA that its bids were deficient and failing to allow CNA to correct the deficiencies. However, a review of the relevant regulations reveals that the WASA contracting officials did not violate the procurement regulations in rejecting CNA's bids as non-responsive.

CNA relies primarily on a procurement regulation then in effect captioned, "Mistakes in

Bids Before Award." *See* 21 D.C. Mun. Reg. § 5312 (1999).[18] That regulation provided in pertinent part as follows:

> 5312.1    Contracting Officer shall examine each bid for mistakes. In cases where the Contracting Officer has reason to believe that a mistake is contained within a bid/proposal, the Contracting Officer shall request from the bidder/proposer verification of the mistake.
>
> 5312.2    The Contracting Officer may correct an apparent clerical mistake before award. If the correction is made, the bid shall be corrected to the intended correct bid and may not be withdrawn.
>
> 5312.3    A Contracting Officer's authority to permit corrections of bids is limited to bids that are responsive and shall not be used to permit corrections to make the bid responsive or competitive.

*Id.* CNA also relies on a regulation captioned, "Mistakes in Bids After Award," which provided in pertinent part:

> 5313.1    If a mistake in a bid or proposal is not discovered until after award, the Contracting Officer may correct the mistake by contract amendment if the Contracting Officer makes a written determination that correcting the mistake would be in the best interest of WASA and that the correction would not change the essential requirements of the contract.

*Id.* § 5313. CNA contends that pursuant to these provisions, WASA contracting officials should have examined CNA's bids, notified CNA of its failure to provide proper bid security, and allowed CNA to correct the mistake. However, the language in these regulations is permissive rather than mandatory, meaning that the Contracting Officer is not required to correct a mistaken bid. Furthermore, § 5312 clearly states that the Contracting Officer cannot permit corrections to make the bid responsive or competitive. The regulations then in effect stated that "[t]o be

---

[18] WASA issued new procurement regulations on June 12, 2009, deleting the former regulations in their entirety. *See* 56 D.C. Reg. 4484 (June 12, 2009). Because the contract solicitations occurred prior to the effective date of the new regulations, the Court refers only to the then-operative regulations.

considered for award, a bid shall be required to comply in all material respects with the solicitation," *id.* § 5310.1, and "[a] Contracting Officer shall reject bids and proposals determined by the Contracting Officer to be non-responsive," *id.* § 5318.7. Because the solicitations at issue required bid security, CNA's failure to include proper bid security rendered its bids non-responsive, and the Contracting Officer could not permit CNA to amend its bid in order to make it responsive.

CNA also relies on a regulation that provided, "A Contracting Officer shall give the successful bidder/proposer an opportunity to resolve minor deficiencies in bids and proposals prior to the award." 21 D.C. Mun. Regs. § 5321.1 (1999). However, the lack of proper bid security is not a "minor" deficiency in a bid. The applicable regulations explicitly stated that a "Contracting Officer may reject bids and proposals that do not include security required to be submitted with the bid/proposal unless the failure to include the security is waived by the General Manager." *Id.* § 5318.9. Therefore, CNA's claim that WASA officials violated procurement regulations by denying CNA the opportunity to correct its deficient bid security is without merit.

CNA also appears to claim that WASA improperly failed to respond to its bid protest regarding WASA Contract No. 90080, where CNA mistakenly submitted a bid for over $11 million instead of its intended bid of $5,040,000. However, as discussed above, the applicable procurement regulations would not have required the WASA Contracting Officer to accept CNA's corrected bid. Therefore, any failure to respond to CNA's bid protest was harmless and did not cause CNA any injury.

For these reasons, the Court shall grant the WASA Defendants' motion to dismiss Count Ten of the First Amended Complaint.

*CNA Has Failed to State a Claim for Tortious Interference with Business Relationships or with Contract*

In Count Thirteen of the First Amended Complaint, CNA purports to assert claims for tortious interference with business relationships and tortious interference with contract. To survive a motion to dismiss on a claim for tortious interference with a business relationship or a contract, the plaintiff must plead: (1) the existence of a valid business relationship or contract; (2) knowledge of the business relationship or contract on the part of the tortfeasor; (3) intentional interference inducing or causing a breach of the relationship or contract; and (4) damages resulting from the breach. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *CASCO Marina Dev., L.L.C. v. D.C. Redev. Land Agency*, 834 A.2d 77, 83 (D.C. 2003).

The First Amended Complaint alleges the following facts in support of CNA's tortious interference claims. CNA alleges that Fort Myer, Anchor, Civil, and Capitol Paving spread false information about CNA's debts to creditors with the aim of tarnishing CNA's reputation in the marketplace. *See* FAC ¶¶ 606-10. CNA claims that these defendants' actions "destroyed good will intentions of [CNA] in fulfilling agreements to its debtor(s)." *Id.* ¶ 613. CNA lists liabilities to debtors in the amount of $2,029,352. *Id.* ¶ 614. CNA claims that it defaulted on some of its obligations to the debtors as a result of defendants' actions. *See id.* ¶ 618. CNA also complains that Fort Myer took aggressive actions to collect an unpaid debt and then complained about CNA's delinquency to DDOT and WASA. *See id.* ¶¶ 619-20.

The Court finds that CNA has failed to state a claim for tortious interference with business relationships or contracts. First, CNA fails to allege that any of the defendants in this count had any knowledge of CNA's business relationships or contracts. Second, CNA has failed to plead facts that plausibly suggest that it suffered damages resulting from any alleged

interference.  CNA's basic claim is that it was injured because it failed to win contracts from DDOT and WASA and because its capacity to pay off its creditors was somehow diminished.  However, CNA fails to demonstrate a causal connection between any alleged tortious interference and its failure to win infrastructure contracts (which, as the Court explained above, was caused by CNA's own failure to comply with bidding requirements), and CNA fails to explain how its inability to pay its creditors for existing obligations was exacerbated by the defendants' alleged interference.  Therefore, CNA has failed to state a plausible tortious interference claim.

Furthermore, insofar as CNA asserts its claim against the District of Columbia, the claim is barred by CNA's noncompliance with D.C. Code § 12-309.  CNA concedes that it has failed to provide notice of its claim against the District of Columbia within six months of the alleged injury as required by D.C. Code § 12-309.  *See* CNA's [70] Opp'n to D.C. Defs.' Mot. to Dismiss or, Alternatively, for Summ. J. at 9.  Compliance with the statutory notice requirement is mandatory, and a suit filed without the required notice must be dismissed.  *See Tucci v. District of Columbia*, 956 A.2d 684, 694 (D.C. 2008).  Therefore, CNA's failure to comply with § 12-309 provides an alternative basis for dismissal of this claim against the District of Columbia.

For these reasons, the Court shall dismiss Count Thirteen of the First Amended Complaint.

### E.    *Other Pending Motions*

Having concluded that all of the claims asserted by CNA in the First Amended Complaint must be dismissed for either lack of standing or failure to state a claim upon which relief can be granted, the Court must now address the other motions pending on the docket.  Defendants

Shrensky, Rodriguez, and G. Batista filed a [49] Motion to Quash Service of Process, which the Court treats as a motion to dismiss lack of insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). CNA failed to file an opposition to this motion, and therefore the Court shall treat it as conceded. *See* LCvR 7(b). Accordingly, the Court may alternatively dismiss the claims against Defendants Shrensky, Rodriguez, and G. Batista for insufficient service of process. Defendant F. Gregorio also filed a [72] Second Motion to Quash Service claiming that he had not been validly served with process; the Court also construes this as a motion to dismiss under Rule 12(b)(5). CNA filed an opposition to this motion, and F. Gregorio filed a reply. However, because the Court has already found that the claims asserted against F. Gregorio must be dismissed for either lack of standing or failure to state a claim, the Court declines to rule separately on his motion to dismiss pursuant to Rule 12(b)(5).

Also pending before the Court is CNA's [89] Motion for Leave to Take One Deposition to Preserve Evidence and a [96] cross-motion for protective order filed by Defendants Loza and the District of Columbia Defendants. The Court's disposition of the defendants' motions to dismiss renders these cross-motions moot; therefore, the Court shall deny them.

Finally, the Court must address the [63] Motion for Sanctions Against Plaintiff and Its Counsel filed by Defendants A&M, Alves, and A. Batista. These defendants seeks sanctions against CNA and its counsel under Federal Rule of Civil Procedure 11. Rule 11 provides in relevant part that when an attorney files a pleading with the court, he is certifying to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that: (1) the pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims,

defenses, and other legal contentions are warranted by existing law or by a nonfrivolous

argument for extending, modifying, or reversing existing law or for establishing new law; and (3)

the factual contentions have evidentiary support or will likely have evidentiary support after a

reasonable opportunity for further investigation or discovery.  Fed. R. Civ. P. 11(b).  If the Court

determines that Rule 11(b) has been violated, "the court may impose an appropriate sanction on

any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R.

Civ. P. 11(c)(1).  "[T]he imposition of sanctions is left to the discretion of the district court

judge."  *1443 Chapin Street, LP v. PNC Bank, Nat'l Ass'n*, 718 F. Supp. 2d 78, 86 (D.D.C.

2010).

Defendants A&M, Alves, and A. Batista contend that CNA and its counsel have violated

Rule 11 by asserting claims against them in the First Amended Complaint that are legally and

factually unsupported and which they believe are being asserted for the improper purpose of

harassment.  They point to the lack of factual allegations pertaining to A&M, Alves, and A.

Batista in the First Amended Complaint and the lack of monetary relief sought against them.

Accordingly, the Court shall review the facts alleged in the First Amended Complaint regarding

each of these defendants.

With respect to A&M, the First Amended Complaint does clearly allege that A&M was a

part of the overall bid-rigging conspiracy along with Fort Myer, Civil, Anchor, and Capitol

Paving.  *See* FAC ¶¶ 4-12.  CNA has alleged facts demonstrating that A&M participated in

several of the bid solicitations and has alleged that A&M had connections to at least one of the

other companies through shared officers.  A&M contends that sanctions are warranted, however,

because there are no specific factual allegations describing A&M's involvement in the alleged

conspiracy. The Court certainly agrees that the First Amended Complaint is not a model of clarity; it is repetitious, longwinded, rambling, and replete with conclusory allegations of conspiracy. Indeed, if the Court were not dismissing CNA's claims for lack of standing, it would likely dismiss the claims for failure to plead facts that plausibly show an entitlement to relief. However, the Court shall not award sanctions under Rule 11 simply because CNA's counsel filed a pleading that is poorly worded and fails to state a claim for relief. *See Tahfs v. Proctor*, 316 F.3d 584, 595 (6th Cir. 2003) ("A complaint does not merit sanctions under Rule 11 simply because it merits dismissal pursuant to Rule 12(b)(6).").

Defendants Alves and A. Batista have a more tenable argument for sanctions. Although they are both named as defendants in the First Amended Complaint, the only factual allegations pertaining to them in the entire pleading are in paragraph 90, where CNA alleges that Alves is the Executive Vice President of A&M; paragraph 91, where CNA alleges that A. Batista is the Administrative Assistant of A&M; and paragraph 7, where CNA alleges that A. Batista is related by blood or marriage to G. Batista. CNA has conceded that it failed to allege any facts pertaining to Alves and concedes that dismissal is appropriate with respect to him. *See* Pl.'s Opp'n to Defs. A&M, Alves & A. Batista's Mot. to Dismiss at 1. Although CNA has not made a similar concession with respect to A. Batista, it is clear that there are no allegations against A. Batista that could support a claim against her. CNA argues that it could not plead specific facts relating to Alves and A. Batista because it has not had the opportunity to engage in discovery. While that does not relieve CNA of its burden of pleading a claim against these individual defendants, the Court is not persuaded that CNA's sloppy pleading rises to the level of sanctionable conduct. Accordingly, the Court shall deny the motion for sanctions filed by A&M, Alves, and A. Batista.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that CNA lacks standing to assert its claims involving an alleged bid-rigging conspiracy because it cannot demonstrate a causal connection between the alleged conspiracy and its failure to win infrastructure contracts awarded by DDOT, DPW, and WASA.  The Court also finds that CNA has failed to state a claim against the contracting officers or agencies for violation of procurement regulations and has failed to state a claim for tortious interference with a business relationship or contract.  Accordingly, the Court shall grant the pending motions to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) and dismiss the First Amended Complaint in its entirety.  The Court shall also grant the motion to dismiss for insufficient service of process filed by Defendants Shrensky, Rodriguez, and G. Batista as conceded and deny without prejudice the motion filed by Defendant F. Gregorio in light of the Court's other rulings.  Because the Court finds that sanctions against CNA's counsel are not warranted under Rule 11, the Court shall deny the motion for sanctions filed by Defendants A&M, Alves, and A. Batista.  All other pending motions shall be denied without prejudice.  An appropriate Order accompanies this Memorandum Opinion.


       */s/*_____
       COLLEEN KOLLAR-KOTELLY
       United States District Judge